CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JUN 15 2012
for Roanoke
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| AL-AKHIR I. M. BRYANT,<br>Plaintiff, | Civil Action No. 7:11-cv-00075 |
| v. | **MEMORANDUM OPINION** |
| GENE M. JOHNSON, et al.,<br>Defendants. | By: Hon. Jackson L. Kiser<br>Senior United States District Judge |

Al-Akhir I. M. Bryant, a Virginia inmate proceeding pro se, filed a civil rights action pursuant to 42 U.S.C. § 1983. By a Supplemented Amended Complaint, plaintiff names as defendants Gene M. Johnson, former Director of the Virginia Department of Corrections ("VDOC"); former VDOC Deputy Director John Jabe; VDOC Western Regional Director John Garman; Randall Mathena, Warden of the Keen Mountain Correctional Center ("KMCC"); KMCC Assistant Warden J. Kiser; KMCC Inmate Classification Authority D. Vass; KMCC Chief of Security E. Newberry; and KMCC correctional officers Captain R. D. Kelly, Lieutenant P. Cox, Sergeant G. Horn, Sergeant M. Hatfield, Walk, Webb, O'Quinn, Childress, P. Tuggle, J. Brown, and K. Allen.

Plaintiff presented seven claims in the Amended Complaint about being incarcerated at the KMCC between December 15, 2008, and March 6, 2009. First, Cox, Horn, Tuggle, Brown, Webb, Walk, Childress, Allen, and O'Quinn allegedly used excessive force in violation of the Eighth Amendment by using a shock shield. Second, Garman, Mathena, Kiser, Newberry, and Kelly allegedly violated the Eighth Amendment because they failed to properly train, supervise, investigate, follow policy, and take disciplinary action for Cox and Horn's unprofessional behavior and abuse of inmates in violation of the Eighth Amendment. Third, Garman, Mathena, Kiser, Vass, Kelly, Cox, Hatfield, and Horn allegedly violated the Fourteenth Amendment by

issuing false, inaccurate, and specious disciplinary reports; failing to investigate and conduct Institutional Classification Authority ("ICA") hearings or follow VDOC policies; placing plaintiff in a strip cell and segregation; and relying on prior disciplinary charges to transfer plaintiff to a disciplinary institution. Fourth, Garman, Mathena, Kiser, Vass, Kelly, Cox, Hatfield, and Horn allegedly violated the First Amendment by retaliating against plaintiff for filing complaints, grievances, and letters. Fifth, Cox, Horn, Tuggle, Brown, Webb, Walk, Childress, Allen, and O'Quinn allegedly were deliberately indifferent and failed to protect plaintiff from Childress using the electric shock shield on plaintiff. Sixth, Cox, Horn, Tuggle, Brown, Webb, Walk, Childress, Allen, and O'Quinn allegedly violated the Eighth Amendment by failing to clean a strip cell or give plaintiff cleaning supplies on February 9, 2009. Seventh, Johnson and Jabe allegedly violated the First Amendment and Religious Land Use and Institutionalized Persons Act by failing to provide appropriate services, opportunities, or reasonable assistance to all legitimate and accepted religious groups whose participants choose to fast in accordance with their respective religious beliefs.

Presently before the court is plaintiff's motion for preliminary injunctive relief to have me order plaintiff's transfer from the Red Onion State Prison ("ROSP"), a Level V facility, to a Level IV or III facility. Plaintiff alleges that unidentified ROSP "staff" denied plaintiff access to the prison law library, which he believes constitutes a First Amendment violation of access to courts. Plaintiff also alleges that unidentified ROSP staff frustrates plaintiff's ability to use the informal complaint process permitted by VDOC policy.[1] Plaintiff further alleges that ROSP

---

[1] Plaintiff filed copies of emergency grievances he filed with VDOC officials to complain that ROSP staff did not give him informal complaint forms.

officials retaliate against plaintiff for filing grievances and lawsuits. Plaintiff lists the various acts of retaliation he suffered at the hands of unidentified officials:

> At this present time, I am the subject of reprisal for my redress of complaints and grievances and filing of lawsuits against employees of the VDOC. Consequently, I have been threatened; assaulted; denied access to the prison's law library books and all other materials; given disciplinary infractions due to misconduct on behalf of prison officials; and found guilty of such infraction(s) – without formal due process; placed in segregation – and at this present time (5/17/2012) held in segregation – without formal due process. In regards to the above mentioned issue(s), I have file[d] complaints, grievances and appeals, <u>all of which [are] still going through the process of exhaustion</u>; and hopefully at the end of which time more (names, dates, times, etc.) will be released to me.

(Pl.'s Aff. in Supp. of Motion for Prelim. Inj. (no. 47-2) ¶ 5 (emphasis added).) Plaintiff believes the retaliation manifests in defendants' decision to delay plaintiff's transfer to a Level IV or III facility.

Plaintiff explains the reason why staff "retaliated" against him and placed him in segregation. On April 27, 2012, Sgt. Robinson[2] approached plaintiff's cell and told plaintiff to "cuff up" at the cell door. Plaintiff asked for a "legitimate reason" why he should cuff up for Robinson, and Robinson replied, "[Bec]ause you're going where I'm at and I'm gonna take care of you." Plaintiff considered the response a threat and an insufficient reason for him to obey an "unlawful order." Consequently, Sgt. R. Hill and Lt. Day charged plaintiff the next day with two institutional infractions for disobeying orders.[3] Plaintiff believes the charges were frivolous because no one explained the basis of Sgt. Robinson's orders and Sgt. Hill and Lt. Day should not be the officers issuing the charges. Plaintiff learned at a subsequent ICA hearing that plaintiff was placed in segregation because staff were investigating him for a 137-B charge.[4]

---

[2] Sgt. Robinson is not a defendant to this action.
[3] Sgt. Hill and Lt. Day are not defendants to this action.
[4] Plaintiff does not define a 137-B charge.

3

Plaintiff also complains about VDOC officials' refusal to transfer plaintiff to Sussex II. VDOC Central Classification Services approved plaintiff to go Sussex II on May 6, 2011, but plaintiff remains at ROSP as of May 17, 2012. VDOC staff explained that space is not available for plaintiff at Sussex II or any other Level IV facility. Plaintiff faults VDOC staff for not explaining why he cannot instead be transferred to a Level III facility.

A preliminary injunction is an "extraordinary and drastic remedy." Munaf v. Geren, 553 U.S. 674, 689-90 (2008). Plaintiff must establish four elements before I may issue a preliminary injunction: 1) he is likely to succeed on the merits; 2) he is likely to suffer irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in his favor; and 4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20-21 (2008). Plaintiff is not allowed to demonstrate only a "possibility" of irreparable harm because that standard is "inconsistent with [the] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at 22.

Plaintiff is not entitled to preliminary injunctive relief because the claims and issues raised in the instant motion do not relate to the allegations raised in the Amended Complaint. See Omega World Travel v. TWA, 111 F.3d 14, 16 (4th Cir. 1997) (stating movant must establish a relationship between the injury claimed in the motion and the conduct giving rise to his complaint). See also In re Microsoft Antitrust Litig., 333 F.3d 517, 526 (4th Cir. 2003) (stating that without this nexus, the court should not consider the factors for preliminary injunctive relief). Plaintiff's instant motion is not related to the use of the shock shield and defendants' responses to the events that occurred at the KMCC. Instead, all the issues complained about in the instant motion arose at the ROSP long after plaintiff experienced the

4

alleged constitutional violations at the KMCC. The VDOC staff complained about in the instant motion do not relate to the current defendants except for Mathena and Kiser. The only basis to issue preliminary injunctive relief against defendants Mathena and Kiser[5] are because they ultimately supervise all specified and unspecified staff at Red Onion State Prison. However, respondeat superior is an insufficient basis to prosecute a § 1983 action, and plaintiff cannot rely on mere labels and conclusions, such as "denial of access to courts" and "retaliation," to state a constitutional claim. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7 (1978). Plaintiff does not have a constitutional right to access prison grievance procedures. Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). Plaintiff does not have a constitutional right to be assigned a specific security classification or housed in a particular prison. See, e.g., Sandin v. Conner, 515 U.S. 472, 486-87 (1995). Plaintiff fails to establish any irreparable harm by being incarcerated at the ROSP instead of another facility. Finally, plaintiff acknowledges that he has not exhausted administrative remedies for any of the instant issues. See 42 U.S.C. § 1997e(a) (requiring exhaustion of available administrative remedies before a federal court may award relief).

Efficient and effective penal administration furthers the public's interest, and involving a federal court in the day-to-day administration of a prison is a course the judiciary generally disapproves of taking. See 18 U.S.C. § 3626(a)(2) ("The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity. . . ."); Bell v. Wolfish, 441 U.S. 520, 540 n.23, 548 n.29 (1979) (explaining that maintaining security and order and operating institution in manageable fashion are "considerations . . . peculiarly within the province and

---

[5] The VDOC transferred Mathena and Kiser from the KMCC to the ROSP.

5

professional expertise of corrections officials"). Accordingly, the balance of equities does not tip in plaintiff's favor, plaintiff fails to establish an entitlement to preliminary equitable relief, and I deny his motion.

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to plaintiff and counsel of record for defendants.

**ENTER**: This 15th day of June, 2012.

Senior United States District Judge